IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| PERLE MENASHE, an individual, | ) | CIVIL NO. 10-00306 JMS/BMK |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING IN PART |
| | ) | DEFENDANTS BANK OF NEW |
| vs. | ) | YORK'S, BANK OF AMERICA, |
| | ) | N.A.'S, AND BAC HOME LOANS |
| BANK OF NEW YORK, a New York | ) | SERVICING LP'S MOTION TO |
| Banking corporation; BANK OF | ) | DISMISS FIRST AMENDED |
| AMERICA, NA, a National Banking | ) | COMPLAINT FILED ON |
| Association formerly known as | ) | NOVEMBER 22, 2010, AND |
| COUNTRYWIDE BANK FSB; BAC | ) | GRANTING LEAVE TO AMEND |
| HOME LOANS SERVICING LP, a | ) | |
| Texas Limited Partnership, formerly | ) | |
| known as COUNTRYWIDE HOME | ) | |
| LOAN SERVICING, INC.; | ) | |
| APPROVED MORTGAGE, INC., a | ) | |
| Hawaii corporation; and DOES 1-100, | ) | |
| inclusive, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**<u>ORDER GRANTING IN PART DEFENDANTS BANK OF NEW YORK'S,
BANK OF AMERICA, N.A.'S, AND BAC HOME LOANS SERVICING LP'S
MOTION TO DISMISS FIRST AMENDED COMPLAINT FILED ON
NOVEMBER 22, 2010, AND GRANTING LEAVE TO AMEND</u>**

## I. **INTRODUCTION**

On May 25, 2010, Plaintiff Perle Menashe ("Plaintiff") filed this

action alleging various claims against Defendants Bank of New York, a New York

banking corporation ("BONY"); Bank of America, NA, formerly known as

Countrywide Bank FSB ("BOA"); BAC Home Loans Servicing LP, formerly

known as Countrywide Home Loan Servicing, Inc. ("BAC"); and Approved

Mortgage, Inc. ("Approved") (collectively, "Defendants") stemming from a

mortgage transaction concerning real property located at 5105 Kapiolani Loop,

Princeville, Hawaii 96722 (the "subject property").

Currently before the court is Defendants BONY, BOA, and BAC's

("Moving Defendants") Motion to Dismiss, in which they argue that Plaintiff's

First Amended Complaint ("FAC") fails to state a cognizable claim. The FAC's

basis for federal jurisdiction is 28 U.S.C. § 1331 (federal question) -- Count I

asserts a violation of the Truth in Lending Act ("TILA"), and Count II asserts a

violation of the Real Estate Settlement Procedures Act of 1974 ("RESPA").

Plaintiffs also assert fifteen state-law claims, invoking the court's supplemental

jurisdiction, 28 U.S.C. § 1367(a). For the reasons set forth below, the court

DISMISSES Counts I and II for failure to state a federal claim, but grants Plaintiff

leave to amend. Because the court has only supplemental jurisdiction over the

remaining claims, the court declines to address those state law claims until Plaintiff

asserts a cognizable claim based on federal law.

///

///

///

## II.  BACKGROUND

**A.     Factual Background**

As alleged in the FAC, on or about June 14, 2007, Plaintiff entered into a loan repayment and security agreement in the amount of $600,000 with Countrywide Bank FSB ("Countrywide"), secured by the subject property.  Doc. No. 28, FAC ¶¶ 3, 14.  The loan terms provide for a five-year fixed-payment schedule of interest only (resulting in a negative amortization loan and a maximum principal balance of $690,000), followed by a payment rate that would be adjusted annually.  *Id.* ¶ 15.

This loan transaction was a refinancing of Plaintiff's earlier mortgage (which carried a monthly payment of $1,764.81), and Countrywide and her mortgage broker, Approved, convinced Plaintiff to refinance with Countrywide for a minimum payment of $2,217.72 per month.  *Id.* ¶ 16.  Countrywide and Approved did not disclose in any papers, however, that the payments may increase to $4,253.36 or even $6,171.68 per month.  *Id.* ¶ 17.  Countrywide and Approved also did not explain that Countrywide paid Approved a yield spread premium of $1,500, and that refinancing would cause Plaintiff $18,121.42 in prepayment penalties with her previous mortgagee, IndyMac.  *Id.* ¶ 19.  Further, although Countrywide and Approved determined that an appraisal was unnecessary, the

HUD statement lists that Integris was the appraiser for an $800 charge. *Id.* ¶ 26. According to the FAC, the terms of the transaction stripped, in total, over $70,000 of equity from the subject property due to costs, fees, and prepayment penalties, making Plaintiff's ability to refinance unlikely. *Id.* ¶ 20.

The FAC asserts that in making and offering this loan, Countrywide and Approved relied on stated income, assets, and liabilities, and failed to make a reasonable determination of whether Plaintiff could truly qualify and repay the loan. *Id.* ¶¶ 25, 27. Approved also falsely inflated Plaintiff's income, and Countrywide based the loan on that inflated income and a credit check only. *Id.* ¶ 27. According to the FAC, if Countrywide and Approved used more accurate information, Plaintiff would not have qualified for the loan. *Id.* ¶ 29. Further, although Plaintiff was not approved for the full payment rate and could have qualified for more appropriate loans, Approved explained to Plaintiff that she would easily be able to refinance within the initial five-year term, omitting mention of the volatility of the loan product and the financial marketplace. *Id.* ¶¶ 18, 21-22.

In July 2008, Bank of America Corp. acquired Countrywide (and, apparently, the mortgage and note) and changed Countrywide's name to BOA. *Id.* ¶ 4. The loan was also apparently serviced by Countrywide Home Loan

Servicing, LP ("CHLS") -- the FAC asserts that Bank of America Corp. acquired CHLS and changed its name to BAC. *Id.* According to the FAC, BOA and BAC were under a duty to inspect and examine the practices of the originators of the loan such that any violations of law and/or illegalities with the loan flow to BOA and BAC. *Id.* ¶ 33.

Plaintiff's mortgage provides that Mortgage Electronic Registration Systems, Inc. ("MERS") is the mortgagee, solely as nominee for Countrywide. Doc. No. 50-4, Moving Defs.' Ex. B.[1] At some point in time, MERS allegedly assigned the loan to BONY as nominee on behalf of Countrywide and/or BOA. Doc. No. 28, FAC ¶ 35. According to the FAC, this assignment is illegal because "[t]he actual owner of the note has not executed the Assignment to the new party" and "[a]n assignment of a mortgage in the absence of the assignment and physical delivery of the note will result in a nullity." *Id.* ¶ 36. The FAC further asserts that the use of MERS is "intentionally designed to mislead the borrower and benefit the lenders," and "MERS has no right to assign a power of sale to foreclose upon the subject property to a successor" such that Defendants have no legal standing to

---

[1] The court takes judicial notice of the mortgage, which is a public document recorded in the Bureau of Conveyances. *See United States v. 14.02 Acres of Land More or Less in Fresno Cnty.*, 547 F.3d 943, 955 (9th Cir. 2008) ("Although, as a general rule, a district court may not consider materials not originally included in the pleadings in deciding a Rule 12 motion, Fed. R. Civ. P. 12(d), it 'may take judicial notice of matters of public record' and consider them without converting a Rule 12 motion into one for summary judgment." (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)).

foreclose against Plaintiff.  *Id.* ¶¶ 38-39.

Finally, the FAC asserts that the mortgage was securitized and as a result BONY does not own the mortgage note and is only a trustee, and BAC is only the servicer for the mortgage pool.  *Id.* ¶¶ 40-42.  According to the FAC, this securitization of the mortgage loan renders the mortgage unenforceable.  *Id.* ¶¶ 43-44.

## B.    Procedural Background

On May 25, 2010, Plaintiff filed this action.  After BAC and BONY filed a Motion for Judgment on the Pleadings, Plaintiff filed the FAC on November 22, 2010.  The FAC alleges seventeen claims titled (1) Violation of TILA, 15 U.S.C. § 1601, et. seq. (Against All Defendants) (Count I); (2) Violation of RESPA (Against All Defendants) (Count II); (3) Respondeat Superior Liability (Against BOA, BAC and BONY) (Count III); (4) Negligent or Wanton Hiring, Training or Retention (Against BOA, BAC and BONY) (Count IV); (5) Negligent Misrepresentation (Against BOA, BAC, and Approved) (Count V); (6) Civil Conspiracy (Against All Defendants) (Count VI); (7) Breach of Contract (Against Approved, BOA, and BAC) (Count VII); (8) Breach of Fiduciary Duty (Against BOA, BAC, and Approved) (Count VIII; (9) Common Law Fraud - Concealment (Against BOA, BAC, and Approved) (Count IX); (10) Common Law Fraud -

Inducement (Against BOA, BAC, and Approved) (Count X); (11) Unfair and Deceptive Acts and Practices - Hawaii Revised Statutes ("HRS") § 480-2 (Against Approved, BAC, BOA, and BONY) (Count XI); (12) Improper Restrictions as a Result of Securitization (Against All Defendants) (Count XII); (13) Wrongful Conversion of Note (Against All Defendants) (Count XIII); (14) The Note and Mortgage Are Unenforceable Because the Mortgagor Never Consented to the Securitization (Against All Defendants) (Count XIV); (15) The Restrictions Imposed Upon the Modification of the Mortgage are a Clog Upon the Equity of Redemption (Against Defendants Claiming Any Interest in the Subject Property) (Count XV); (16) Quiet Title (Against Defendants Claiming Any Interest in the Subject Property) (Count XVI); and (17) The Unenforceability of the Note and Mortgage Requires the Court to Declare a Constructive Trust or Mortgage Trust (Against Defendants Claiming Any Interest in the Subject Property) (Count XVII).

On July 6, 2011, Moving Defendants filed their Motion to Dismiss. On September 2, 2011, Plaintiff filed a Motion to Strike the Motion to Dismiss, or in the Alternative, Memorandum in Opposition.[2]  On September 12, 2011, Moving Defendants filed a Reply.  A hearing was held on September 26, 2011.

---

[2]  Beyond presenting opposition arguments, Plaintiff filed a Motion to Strike Defendants' Motion to Dismiss as untimely.  On September 16, 2011, Plaintiff withdrew this Motion.  Doc. No. 56.

### III. <u>STANDARD OF REVIEW</u>

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss a claim for "failure to state a claim upon which relief can be granted[.]"

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008). This tenet -- that the court must accept as true all of the allegations contained in the complaint -- "is inapplicable to legal conclusions." *Iqbal*, 129 S. Ct. at 1949. Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief. *Id.* at 1950.

The court may dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on its own motion. *See Omar v. Sea-Land Serv., Inc.*, 813 F.2d

986, 991 (9th Cir. 1987) ("A trial court may dismiss a claim *sua sponte* under [Rule] 12(b)(6). Such a dismissal may be made without notice where the claimant cannot possibly win relief."); *Ricotta v. California*, 4 F. Supp. 2d 961, 968 n.7 (S.D. Cal. 1998) ("The Court can dismiss a claim *sua sponte* for a Defendant who has not filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6)."); *see also Baker v. Director, U.S. Parole Comm'n*, 916 F.2d 725, 727 (D.C. Cir. 1990) (holding that a district court may dismiss cases *sua sponte* pursuant to Rule 12(b)(6) without notice where plaintiff could not prevail on complaint as alleged).

## IV. DISCUSSION

Moving Defendants argue that each of Plaintiff's claims should be dismissed for failure to state a cognizable claim. The court first addresses Plaintiff's federal claims, and, finding that Plaintiff's federal claims must be dismissed, addresses the issue of supplemental jurisdiction.

### A. Federal Claims

#### 1. Violation of TILA, 15 U.S.C. § 1601 (Count I)

The FAC asserts that Moving Defendants violated TILA by failing to provide accurate material disclosures such that Plaintiff is entitled to damages and rescission of the mortgage loan. Doc. No. 28, FAC ¶¶ 49-54.[3] Moving

---

[3] Although the title of Count I asserts that this claim is against all Defendants, the
(continued...)

Defendants argue that Plaintiff's TILA claims for damages and for rescission are time-barred. The court agrees.

a. *Damages under TILA*

Any claim for damages under TILA must be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). For violations of TILA's disclosure requirements, this one-year period begins to run "when the plaintiffs executed their loan documents, because they could have discovered the alleged disclosure violations and discrepancies at that time." *Cervantes v. Countrywide Home Loans, Inc.*, --- F.3d ----, 2011 WL 3911031, at *8 (9th Cir. Sept. 7, 2011) (citing 15 U.S.C. § 1640(e)); *see also King v. California*, 784 F.2d 910, 915 (9th Cir. 1986) (stating that the limitations period begins to run from the date of consummation of the loan).

Plaintiff entered into the mortgage transaction on June 14, 2007, and did not bring this action until almost three years later on May 25, 2010. Accordingly, on the face of the FAC, Plaintiff's TILA damages claim appears

---

[3](...continued)
allegations assert TILA violations against Moving Defendants only. In any event, TILA sets forth disclosure requirements for "creditors" only, which does not include mortgage brokers and servicers. *See* 15 U.S.C. § 1602(f); *Cetto v. LaSalle Bank Nat'l Ass'n*, 518 F.3d 263, 271 (4th Cir. 2008) (affirming dismissal because a mortgage broker was not a "creditor" as defined by 15 U.S.C. § 1602(f))); *Viernes v. Executive Mortg., Inc.*, 372 F. Supp. 2d 576, 581-82 (D. Haw. 2004) (holding that a mortgage broker and one of its officers were not creditors under TILA). The court therefore construes Count I as asserting a TILA claim against Moving Defendants only.

time-barred unless Plaintiff can demonstrate that equitable tolling and/or equitable estoppel applies to toll the statute of limitations. The allegations of the FAC, however, do not support application of either doctrine.

Equitable tolling applies "where, despite all due diligence, the party invoking equitable tolling is unable to obtain vital information bearing on the existence of the claim." *Cervantes*, 2011 WL 3911031, at *8 (quoting *Socop-Gonzalez v. I.N.S.*, 272 F.3d 1176, 1193 (9th Cir. 2001)); *King*, 784 F.2d at 915 ("[T]he doctrine of equitable tolling may, in the appropriate circumstances, suspend the limitations period until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA action."). The FAC includes no allegations, however, suggesting that equitable tolling may apply. Rather, the FAC asserts only that the statute of limitations was tolled due to Moving Defendants' "failure to effectively provide the required disclosures and notices." Doc. No. 28, FAC ¶ 54. Even if true, this allegation is insufficient to satisfy equitable tolling because it would establish no more than the TILA violation itself; this allegation does not suggest that any circumstances beyond Plaintiff's control prevented her from learning of the TILA violation. *See, e.g.*, *Cervantes*, 2011 WL 3911031, at *8 (rejecting equitable tolling argument because "the plaintiffs have not alleged circumstances beyond their control that

prevented them [from learning of the TILA violations]"); *Meyer v. Ameriquest Mortg. Co.*, 342 F.3d 899, 902-03 (9th Cir. 2003) (rejecting argument for equitable tolling of the TILA claim because plaintiff was in full possession of all loan documents and did not allege any actions that would have prevented discovery of the alleged TILA violations); *Jacob v. Aurora Loan Servs.*, 2010 WL 2673128, at *3 (N.D. Cal. July 2, 2010) ("Plaintiff cannot rely on the same factual allegations to show that Defendants violated federal statutes and to toll the limitations periods that apply to those statutes. Otherwise, equitable tolling would apply in every case where a plaintiff alleges violations of TILA . . . and the statutes of limitations would be meaningless."); *Garcia v. Wachovia Mortg. Corp.*, 676 F. Supp. 2d 895, 906 (C.D. Cal. 2009) ("[T]he mere existence of TILA violations and lack of disclosure does not itself equitably toll the statute of limitations.").

Nor do the FAC's allegations support a finding of equitable estoppel. "Equitable estoppel 'halts the statute of limitations when there is active conduct by a defendant, above and beyond the wrongdoing upon which the plaintiff's claim is filed, to prevent the plaintiff from suing in time.'" *Cervantes*, 2011 WL 3911031, at *9 (quoting *Guerrero v. Gates*, 442 F.3d 697, 706 (9th Cir. 2006)); *see also Lukovsky v. Cnty. of San Francisco*, 535 F.3d 1044, 1052 (9th Cir. 2008) ("The primary problem with plaintiffs' argument is that their alleged basis for equitable

estoppel is the same as their cause of action.  As we have previously explained, the plaintiff must point to some fraudulent concealment, some active conduct by the defendant '*above and beyond* the wrongdoing upon which the plaintiff's claim is filed, to prevent the plaintiff from suing in time.'" (citation omitted)).  The FAC includes no allegations that Moving Defendants concealed any particular information necessary for Plaintiff to discover the alleged TILA violations, or indeed made any "misrepresentation and concealment of facts [that] is 'above and beyond the wrongdoing' that forms the basis for her TILA [claim]."  *See Cervantes*, 2011 WL 3911031, at *9; *Robertson v. Bank of Am., NA*, 2011 WL 1231003, at *3 (N.D. Cal Apr. 1, 2011) (rejecting equitable estoppel argument where "the FAC is devoid of facts demonstrating that Defendant actively concealed its purported TILA violations [and] Plaintiff does nothing more than restate her fraud and TILA claims").

In opposition, Plaintiff argues that she was delayed in filing this action because her counsel needed to determine to whom Plaintiff should provide her notice of rescission.  *See* Doc. No. 52, Pl.'s Opp'n at 11-12.  This argument addresses only Plaintiff's TILA rescission claim and not her TILA damages claim, and in any event provides no argument for why equitable tolling and/or equitable estoppel should apply where Plaintiff brought this action almost two years after the

statute of limitations had expired.  In other words, at the time that Plaintiff's counsel started researching the proper Defendants in this action, the statute of limitations on Plaintiff's TILA damages claim had already run.  Any delay that her counsel's research may have caused cannot save a claim that is already untimely.

The court therefore DISMISSES Plaintiff's TILA claim for damages. This dismissal is with leave to amend -- if Plaintiff believes that facts exist that support tolling of the statute of limitations for her TILA damages claims, she may file a Second Amended Complaint asserting such facts.

### b.    *Rescission under TILA*

TILA provides a right to rescind a loan transaction "until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing [the required material disclosures]."  15 U.S.C. § 1635(a).  If the required disclosures are not provided, however, the right to rescission expires "three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first[.]"  15 U.S.C. § 1635(f). Section 1635(f) is an absolute statute of repose barring "any [TILA rescission] claims filed more than three years after the consummation of the transaction." *Miguel v. Country Funding Corp.*, 309 F.3d 1161, 1164 (9th Cir. 2002) (citing

*King*, 784 F.2d at 913).  That is, the three-year period is not subject to equitable tolling.  *See Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998) (stating that "§ 1635(f) completely extinguishes the right of rescission at the end of the 3-year period," even if a lender failed to make the required disclosures).

A transaction is "consummated" -- and the statute of limitations begins to run -- when a consumer becomes contractually obligated.  *See Jackson v. Grant*, 890 F.2d 118, 120 (9th Cir. 1989) (citing 12 C.F.R. § 226.2(a)(13)).  In turn, a consumer generally becomes contractually obligated when the loan is executed.  *See, e.g.*, *Rivera v. BAC Home Loans Servicing, L.P.*, 756 F. Supp. 2d 1193, 1198 (N.D. Cal. 2010); *Amstadter v. Bank of Am.*, 2010 WL 727515, at *2 (E.D. Cal. Feb. 26, 2010).  Further, a borrower exercises her right to rescind by "notify[ing] the creditor of the rescission by mail, telegram or other means of written communication.  Notice is considered given when mailed, when filed for telegraphic transmission or, if sent by other means, when delivered to the creditor's designated place of business."  12 C.F.R. § 226.23(a)(2).  In other words, a plaintiff must mail her creditor notice of rescission within three years from when the loan documents are signed.

Plaintiff entered into the loan transaction on June 14, 2007, such that Plaintiff had until June 14, 2010 to notify Defendants that she was rescinding the

mortgage loan.  The FAC does not assert, however, the date that Plaintiff provided

actual notice to Defendants.[4]  Rather, the FAC asserts only that, "[b]y *filing* her

complaint the Plaintiff exercised her right to cancel."  Doc. No. 28, FAC ¶ 52

(emphasis added).  But merely filing an action does not provide notice to

Defendants -- the plain language of 12 C.F.R. § 226.23(a)(2) requires that Plaintiff

provide *actual* notice through written communication to Defendants.  *See Gamiao*

*v. Bank of Am.*, 2011 WL 839757, at *4 (D. Haw. Mar. 4, 2011) (dismissing TILA

rescission claim where action was filed within three years of the loan

consummation, but Defendants were not served until after three years); *see also*

*Mitchell v. Bank of Am.*, 2011 WL 334988, at *2 (S.D. Cal. Jan. 31, 2011) ("The

language of Regulation Z is clear: in order to rescind a loan, actual notice of the

rescission must be given to the creditor and it may not be presumed.").  And the

court cannot infer that Plaintiff gave Defendants timely notice through service of

---

[4]  Moving Defendants assert, and Plaintiff does not dispute, that Plaintiff did not provide notice to Moving Defendants until June 17, 2010, when her counsel mailed to them a copy of the Complaint in this action.  Although the court may take judicial notice of the date a letter was mailed, the content of such mailing is not the proper subject of judicial notice.  As explained below, however, the court need consider this letter to find that the FAC fails to state a timely claim for TILA rescission.

In determining whether she can amend the FAC to state a timely TILA rescission claim, Plaintiff should determine whether the mailing of the Complaint was the first time she provided notice to Defendants that she was actually seeking rescission pursuant to TILA.  If Plaintiff did not notify Defendants via letter prior to June 14, 2010 that she was actually seeking rescission pursuant to TILA (as opposed to notifying Defendants that she will seek rescission in the future), Plaintiff cannot state a TILA rescission claim.

the Complaint -- an Answer was not filed until August 2, 2010, suggesting that Defendants received the Complaint after the three-year period had already run. Accordingly, the FAC fails to include sufficient facts to establish the timeliness of Plaintiff's TILA rescission claim.

In opposition, Plaintiff argues that her filing of a Complaint was sufficient to provide notice to Defendants. Doc. No. 52, Pl.'s Opp'n at 14. In support of her argument, Plaintiff cites a number of cases that dismissed TILA rescission claims where the action was not filed within three years. *Id.* These cases merely stand for the proposition that a plaintiff's TILA rescission claim is untimely if the plaintiff fails to file an action within three years; they do not address the specifics of when and how notice must be provided to comply with 12 C.F.R. § 226.23(a)(2). *See, e.g.*, *Rosal v. First Fed. Bank of Cal.*, 671 F. Supp. 2d 1111, 1124 (N.D. Cal. 2009) ("Because plaintiff commenced the instant action more than three years after signing his loan documents, his TILA rescission claim is time-barred."); *Mangindin v. Washington Mut. Bank*, 637 F. Supp. 2d 700, 706 (N.D. Cal. 2009) ("[S]ince Plaintiffs did not file this action prior to August 29, 2007, they cannot seek damages under § 1640 of TILA.").

Plaintiff also argues that the date of "consummation" of the loan, as used in 12 C.F.R. § 226.2(13), occurred some time after the loan documents were

17

signed because Plaintiff was not obligated under the loans until her prior loan with IndyMac was paid off and the check she received cleared. Doc. No. 52, Pl.'s Opp'n at 14-15. Plaintiff offers only argument, and points to no provision contained in the loan documents suggesting the parties did not have a legally binding agreement once the documents were executed. Rather, numerous courts have found that the date of consummation is the date the loan documents are executed. *See, e.g.*, *Badua v. Fremont Inv. & Loan*, 2011 WL 1526813, *6 (D. Haw. Apr. 20, 2011) (using date Plaintiff entered into the loan transaction as the date of loan consummation); *Wallace v. BAC Home Loans Servicing, LP*, 2011 WL 675354, at *7 (D. Haw. Feb. 16, 2011) (same). Indeed, it is a basic tenet of contract law that a bilateral contract is formed once signed by the parties. *See, e.g.*, Williston on Contracts § 1:17, at 68 (4th ed. 1999) ("A bilateral contract exists when both parties exchange mutual or reciprocal promises."). The court therefore rejects that the parties were not contractually bound at the time the loan documents were executed, *i.e.*, on June 14, 2007.

Finally, Plaintiff attaches correspondence between her counsel and Defendants' counsel, which she asserts shows that equitable tolling should apply because it took time to determine which parties she should communicate with to provide her notice of rescission. Doc. No. 52, Pl.'s Opp'n at 12-13. Regardless of

any such facts, a TILA rescission claim is an absolute statute of repose and not subject to equitable tolling. *See Miguel*, 309 F.3d at 1164.

The court therefore DISMISSES Plaintiff's TILA rescission claim with leave to amend to assert, if possible, that Plaintiff timely notified Defendants that she was invoking her right to rescind pursuant to TILA.

### 2. *Violation of Real Estate Settlement Procedures Act (Count II)*

In support of Plaintiff's RESPA claim, the FAC asserts that Defendants failed to (1) disclose all affiliated business arrangements, such as between Countrywide and Landsafe Appraisal Services Inc., or (2) provide an accurate HUD-1 statement at closing. Doc. No. 28, FAC ¶¶ 61-62.

These allegations fail to state a RESPA violation. In general, only three sections of RESPA create a private right of action: (1) 12 U.S.C. § 2605 requiring disclosure to a loan applicant of whether the servicing of the loan may be assigned, sold or transferred; notice to the borrower at the time of transfer; and responses by the loan servicer to qualified written requests ("QWR")[5] by the

---

[5] A QWR is defined as:
> a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that: (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

(continued...)

borrower; (2) 12 U.S.C. § 2607 prohibiting kickbacks for real estate settlement services; and (3) 12 U.S.C. § 2608 prohibiting sellers from requiring buyers to use a specific title insurer as a condition of its sale. *See also Washington v. Nat'l City Mortg. Co.*, 2011 WL 1842836, at *7 (N.D. Cal. May 16, 2011); *Amina v. WMC Mortg. Corp.*, 2011 WL 1869835, at *8 (D. Haw. May 16, 2011); *Padilla v. One West Bank*, 2010 WL 5300900, at *5 (N.D. Cal. Dec. 20, 2010).  Claims brought under § 2607 or 2608 are subject to a one-year statute of limitations, while claims under § 2605 are governed by a three-year statute of limitations, which commence to run when the violation occurs.  12 U.S.C. § 2614.

The FAC does not assert a violation of any of these sections against any Defendant and the court can hardly discern what RESPA provision Plaintiff believes Defendants violated.  Plaintiff may possibly be attempting to assert a claim for violation of the anti-kickback provision, 12 U.S.C. § 2607, by asserting that Countrywide and Landsafe Appraisal Services are affiliated and Countrywide paid a yield spread premium without notice to Plaintiffs.  FAC ¶¶ 19, 61.  Yet these allegations come nowhere close to stating a claim upon which relief can be granted.  Specifically, § 2607 prohibits the acceptance of "any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that

---

[5](...continued)
12 U.S.C. § 2605(e)(1)(B).

business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person."  In other words, a RESPA violation occurs when a party receives a fee for providing a referral regarding a mortgage loan.  No such allegations are included the FAC.

In opposition, Plaintiff argues that she should be allowed to plead this claim generally, consistent with the purpose of RESPA "to clarify who owes what duty to whom in relation to the subject Loan."  Doc. No. 52, Pl.'s Opp'n at 15. Plaintiff explains that she sent several letters to BOA and/or BAC containing QWRs for information pursuant to RESPA, and that BOA and/or BAC did not fully respond and/or failed to provide fully accurate information.  Plaintiff asserts that she should be able to assert a claim based on BAC and BOA's "obstructionist" behavior.  Doc. No. 52, Pl.'s Opp'n at 15-16.  Notably, Plaintiff does not argue that she wishes to assert a claim pursuant to § 2607.

The court rejects this argument.  Plaintiff provides no support for the proposition that she may assert a generalized claim for violation of RESPA. Rather, the plain language of RESPA provides that a plaintiff must state a cause of action for violation of 12 U.S.C. §§ 2605, 2607 or 2608.  Further, Plaintiff did not include in the FAC any allegations that she made any QWRs to BOA and BAC to which they failed to properly respond; the court's review on a Rule 12(b)(6)

motion is constrained to the allegations in the FAC.

Accordingly, the court DISMISSES Plaintiff's RESPA claim. This dismissal is as to all Defendants, with leave for Plaintiff to amend, if possible, a RESPA claim for BAC and/or BOA's failure to properly respond to a QWR.

In determining whether she can assert a RESPA claim for failure to properly respond to a QWR, Plaintiff should carefully consider the contours of such claim. Specifically, RESPA provides that "[i]f any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days[.]" 12 U.S.C. § 2605(e)(1)(A). "Servicing" is defined as:

> receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 2609 of this title, and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan.

12 U.S.C. § 2605(i)(3). After receiving the QWR, within sixty days, the loan servicer must (1) correct the borrower's account and/or provide the requested servicing information, or, (2) after conducting an investigation, provide the

borrower with a written explanation of why the servicer believes the account is correct and/or why the requested information is unavailable.[6] *See* 12 U.S.C. § 2605(e)(2). A RESPA claim also requires that a plaintiff establish damages. 12 U.S.C. § 2605(f)(1); *see also Esoimeme v. Wells Fargo Bank*, 2011 WL 3875881, at *14 (E.D. Cal. Sept. 1, 2011) (dismissing claim where the plaintiff failed to "allege any pecuniary loss from defendant's alleged failure to respond to the QWR"); *Soriano v. Countrywide Home Loans, Inc.*, 2011 WL 1362077, at *6 (N.D. Cal. Apr. 11, 2011) (reasoning that "even if a RESPA violation exists, Plaintiff must show that the losses alleged are causally related to the RESPA violation itself to state a valid claim under RESPA"); *Shepherd v. Am. Home Mortg. Servs.*, 2009 WL 4505925, at *3 (E.D. Cal. Nov. 20, 2009) ("[A]lleging a breach of RESPA duties alone does not state a claim under RESPA. Plaintiff must, at a minimum, also allege that the breach resulted in actual damages." (quoting *Hutchinson v. Del. Sav. Bank FSB*, 410 F. Supp. 2d 374, 383 (D. N.J. 2006))).

---

[6] Although Plaintiff attached to her Opposition several letters between her counsel and BOA and/or BAC, it would be inappropriate for the court at this time to determine whether any of these letters qualify as QWRs (as opposed to requests for information beyond servicing information), and/or whether in response, any Defendant failed to provide the servicing information requested (as opposed to other information requested). The court also does not speculate as to what damages, if any, Plaintiff might have experienced due to a RESPA violation.

## B.     Supplemental Jurisdiction

Because Counts I and II provide the only basis of federal jurisdiction, the court does not address the other fifteen state law counts asserted in the FAC.[7] If Plaintiff does not file a Second Amended Complaint, the court will decline jurisdiction over these state law claims pursuant to 28 U.S.C. § 1367(c) and dismiss them without prejudice.[8]  *See City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) ("[W]hen deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'" (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).

"[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors will point towards declining to exercise jurisdiction over the remaining state-law claims[.]"  *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (en banc); *Curiel v. Barclays Capital Real*

_____

[7]  Although the FAC asserts diversity jurisdiction exists, according to the FAC both Plaintiff and Approved are citizens of Hawaii.  Doc. No. 28, FAC ¶¶ 1, 5.  The court therefore concludes that it does not have diversity jurisdiction.  *See* 28 U.S.C. § 1332(a)(1) (providing that diversity jurisdiction exists where the matter in controversy exceeds $75,000 and is between citizens of different states).

[8]  28 U.S.C. § 1367(d)  provides that "[t]he period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period."

24

*Estate Inc.*, 2010 WL 729499, at *1 (E.D. Cal. Mar. 2, 2010) (reasoning that "primary responsibility for developing and applying state law rests with the state courts" and -- after dismissing TILA and RESPA claims -- declining to exercise supplemental jurisdiction over state law claims sounding in wrongful foreclosure).

If Plaintiff chooses to file a Second Amended Complaint that states a cognizable federal claim against Defendants, however, the court will retain jurisdiction over related state law claims included in the Second Amended Complaint and address them if challenged at that time. Any state law claims would need to be re-alleged if Plaintiff chooses to pursue them. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992) ("[A]fter amendment the original pleading no longer performs any function and is "treated thereafter as non-existent[.]" (quoting *Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967)).

## V. <u>CONCLUSION</u>

For the foregoing reasons, Moving Defendants' Motion to Dismiss is GRANTED in part. Counts I and II are dismissed without prejudice for failure to state a claim. By October 11, 2011, Plaintiff shall either file a Second Amended Complaint or notify the court that she wishes to proceed on her state law claims only in Hawaii state court. If Plaintiff chooses the latter course, the state law

claims will also be dismissed without prejudice, and judgment will enter in favor of

Defendants.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, September 27, 2011.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Menashe v. Bank of New York et al.*, Civ. No. 10-00306 JMS/BMK, Order Granting in Part
Defendants Bank of New York's, Bank of America, N.A.'s, and BAC Home Loans Servicing
LP's Motion to Dismiss First Amended Complaint Filed on November 22, 2010, and Granting
Leave to Amend