IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| PERLE MENASHE, an individual, | ) | CIVIL NO. 10-00306 JMS/BMK |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING IN PART AND |
| | ) | DENYING IN PART |
| vs. | ) | DEFENDANTS BANK OF NEW |
| | ) | YORK'S, BANK OF AMERICA, |
| BANK OF NEW YORK, a New York | ) | N.A.'S, AND BAC HOME LOANS |
| Banking corporation; BANK OF | ) | SERVICING LP'S MOTION TO |
| AMERICA, NA, a National Banking | ) | DISMISS SECOND AMENDED |
| Association formerly known as | ) | COMPLAINT FILED ON |
| COUNTRYWIDE BANK FSB; BAC | ) | OCTOBER 12, 2011 |
| HOME LOANS SERVICING LP, a | ) | |
| Texas Limited Partnership, formerly | ) | |
| known as COUNTRYWIDE HOME | ) | |
| LOAN SERVICING, INC.; | ) | |
| APPROVED MORTGAGE, INC., a | ) | |
| Hawaii corporation; and DOES 1-100, | ) | |
| inclusive, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS
BANK OF NEW YORK'S, BANK OF AMERICA, N.A.'S, AND BAC HOME
LOANS SERVICING LP'S MOTION TO DISMISS SECOND AMENDED
COMPLAINT FILED ON OCTOBER 12, 2011**

## I.  INTRODUCTION

On May 25, 2010, Plaintiff Perle Menashe ("Plaintiff") filed this

action alleging various claims against Defendants Bank of New York, a New York

banking corporation ("BONY"); Bank of America, NA, formerly known as

Countrywide Bank FSB ("BANA"); and BAC Home Loans Servicing LP, formerly

known as Countrywide Home Loan Servicing, Inc. ("BAC") (collectively,

"Defendants") stemming from a mortgage transaction concerning real property

located at 5105 Kapiolani Loop, Princeville, Hawaii 96722 (the "subject

property").

       Plaintiff filed her First Amended Complaint ("FAC") after Defendants

filed a Motion for Judgment of the Pleadings on the Complaint, and Plaintiff filed

her Second Amended Complaint ("SAC") after the court dismissed the federal

claims and declined jurisdiction over the remaining state law claims.[1]  *See*

*Menashe v. Bank of New York*, 2011 WL 4527384, at *8-9 (D. Haw. Sept. 27,

2011).  The SAC asserts a slew of claims for violations of the Real Estate

Settlement Procedures Act of 1974 ("RESPA") and state law claims.

       Currently before the court is Defendants' Motion to Dismiss, in which

they argue that the SAC fails to state a cognizable claim.  Based on the following,

the court GRANTS in part and DENIES in part Defendants' Motion to Dismiss.

///

///

///

///

---

[1]  Plaintiff had named as a Defendant Approved Mortgage, Inc. ("Approved"), which Plaintiff later dropped in her SAC to establish diversity jurisdiction.

## II.  **BACKGROUND**

### A.     **Factual Background**

As alleged in the SAC, on or about June 14, 2007, Plaintiff entered into a loan repayment and security agreement in the amount of $600,000 with Countrywide Bank FSB ("Countrywide"), secured by the subject property.  Doc. No. 60, SAC ¶¶ 3, 22.  The loan terms provide for a five-year fixed-payment schedule of interest only (resulting in a negative amortization loan and a maximum principal balance of $690,000), followed by a payment rate that would be adjusted annually.  *Id.* ¶ 23.

This loan transaction was a refinancing of Plaintiff's earlier mortgage (which carried a monthly payment of $1,764.81), and Countrywide convinced Plaintiff to refinance with Countrywide for a minimum payment of $2,217.72 per month.  *Id.* ¶ 24.  Countrywide did not disclose in any papers, however, that the payments may increase to $4,253.36 or even $6,171.68 per month.  *Id.* ¶ 25.  Countrywide also did not explain that it paid a yield spread premium of $1,500, and that refinancing would cause Plaintiff $18,121.42 in prepayment penalties with her previous mortgagee, IndyMac.  *Id.* ¶ 27.  Further, although Countrywide determined that an appraisal was unnecessary, the HUD statement lists that Integris was the appraiser for an $800 charge.  *Id.* ¶ 34.  According to the SAC, the terms of

3

the transaction stripped, in total, over $70,000 of equity from the subject property due to costs, fees, and prepayment penalties, making Plaintiff's ability to refinance unlikely. *Id.* ¶ 28.

The SAC asserts that in making and offering this loan, Countrywide relied on stated income, assets, and liabilities, and failed to make a reasonable determination of whether Plaintiff could truly qualify and repay the loan. *Id.* ¶¶ 33, 35. Approved, the mortgage broker, also falsely inflated Plaintiff's income, and Countrywide based the loan on that inflated income and a credit check only. *Id.* ¶ 35. According to the SAC, if Countrywide used more accurate information, Plaintiff would not have qualified for the loan. *Id.* ¶ 36. Further, although Plaintiff was not approved for the full payment rate and could have qualified for more appropriate loans, Countrywide explained to Plaintiff that she would easily be able to refinance within the initial five-year term, omitting mention of the volatility of the loan product and the financial marketplace. *Id.* ¶¶ 26, 29-31. The SAC asserts that Countrywide breached its fiduciary duty to place Plaintiff into a loan that she could afford. *Id.* ¶¶ 32, 37. Indeed, since entering into the loan transaction, Plaintiff has had difficulty making her payments, and has begun to fall behind after filing this action such that she is facing imminent default and foreclosure. *Id.* ¶¶ 38-39.

4

In July 2008, Bank of America Corp. acquired Countrywide (and, apparently, the mortgage and note) and changed Countrywide's name to BANA. *Id.* ¶ 4.  The loan was also apparently serviced by Countrywide Home Loan Servicing, LP ("CHLS") -- the SAC asserts that Bank of America Corp. acquired CHLS and changed its name to BAC.  *Id.*  According to the SAC, BANA and BAC were under a duty to inspect and examine the practices of the originators of the loan such that any violations of law and/or illegalities with the loan flow to BOA and BAC.  *Id.* ¶ 49.

Plaintiff's mortgage provides that Mortgage Electronic Registration Systems, Inc. ("MERS") is the mortgagee, solely as nominee for Countrywide. Doc. No. 63-4, Defs.' Ex. B.[2]  At some point in time, MERS allegedly assigned the loan to BONY as nominee on behalf of Countrywide and/or BANA.  Doc. No. 60,

---

[2]  The court takes judicial notice of the mortgage, which is a public document recorded in the Bureau of Conveyances.  *See United States v. 14.02 Acres of Land More or Less in Fresno Cnty.*, 547 F.3d 943, 955 (9th Cir. 2008) ("Although, as a general rule, a district court may not consider materials not originally included in the pleadings in deciding a Rule 12 motion, Fed. R. Civ. P. 12(d), it 'may take judicial notice of matters of public record' and consider them without converting a Rule 12 motion into one for summary judgment." (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)).

Plaintiff also requests that the court take judicial notice "of the Attorneys General investigations being conducted by all fifty states against [BANA] based on the same or substantially similar fact patterns alleged by other homeowners."  Doc. No. 67, Pl.'s Opp'n at 9. The court denies Plaintiff's request -- Plaintiff fails to explain how such facts are directly relevant to the Motion to Dismiss and/or establish whether Plaintiff has stated a claim upon which relief can be granted.  Indeed, whether BANA has been accused of misdeeds in other instances sheds no light on whether BANA has committed misdeeds as alleged in this action.  In short, this court is not here to pass judgment on culpability for our nation's recent mortgage collapse.

SAC ¶ 51.  According to the SAC, this assignment is illegal because "[t]he actual owner of the note has not executed the Assignment to the new party" and "[a]n assignment of a mortgage in the absence of the assignment and physical delivery of the note will result in a nullity."  *Id.* ¶ 52.  The SAC further asserts that the use of MERS is "intentionally designed to mislead the borrower and benefit the lenders," and "MERS has no right to assign a power of sale to foreclose upon the subject property to a successor" such that Defendants have no legal standing to foreclose against Plaintiff.  *Id.* ¶¶ 54-55.

The SAC asserts that the mortgage was securitized and as a result, BONY does not own the mortgage note and is only a trustee, and BAC is only the servicer for the mortgage pool.  *Id.* ¶¶ 56-58.  According to the SAC, this securitization renders the mortgage unenforceable.  *Id.* ¶¶ 59-60.

Finally, as to Defendants' alleged RESPA violations, the SAC asserts that on December 21, 2009, Plaintiff, through her attorney, mailed to BANA a qualified written request ("QWR") requesting "specific servicing related information."  *Id.* ¶ 40.  The December 21, 2009 letter, attached to the SAC as Exhibit 1, requests "a 'certified' copy of the original promissory note that was signed," and "a copy of the appraisal taken at the time of the loan."  Doc. No. 60-1, SAC Ex. 1.  On December 31, 2009, BANA requested written authorization from

Plaintiff, which Plaintiff returned on January 22, 2010.  Doc. No. 60, SAC

¶ 41.  On March 18, 2010, Plaintiff renewed her request for the information sought

in the December 21, 2009 letter, and additionally requested (1) nineteen categories

of documents concerning the mortgage transaction, servicing of the mortgage, sales

and/or assignments of the mortgage, and correspondence to Plaintiff, and

(2) that BANA answer eleven different questions seeking information on, among

other things, the names of the holder(s) of the note and mortgage, the location of

the note and mortgage, calculations and rates on the mortgage, and any pooling

arrangements of the mortgage loan.  Doc. No. 60-2, SAC Ex. 2.

BANA responded in an April 6, 2010 letter by providing a summary

of the loan, yet declined all other requests as going "beyond that which is available

through a [QWR] made under 12 U.S.C. § 2605(B)."  Doc. No. 60-3, SAC Ex. 3.

BANA further explained that "Countrywide/Bank of America did not originate the

subject loan . . . [and] is not responsible for any misunderstanding or lack of

communication between the borrower and originating entity."  *Id.*  BANA also

explained that "a credit block was placed while the issues in your letter were

addressed," and that "we will not remove the negative credit reporting from our

customer's credit file."  *Id.*   According to the SAC, BANA has yet to provide a

complete response to Plaintiff's QWRs, causing Plaintiff damages.  *Id.* ¶¶ 46-47.

**B.     Procedural Background**

On May 25, 2010, Plaintiff filed this action against Defendants and Approved.  After BAC and BONY filed a Motion for Judgment on the Pleadings, Plaintiff filed the FAC on November 22, 2010.  Defendants subsequently filed a Motion to Dismiss the FAC, and on September 27, 2011, the court dismissed Plaintiff's federal claims with leave for Plaintiff to amend.  The September 27, 2011 Order further declined jurisdiction over Plaintiff's remaining state law claims until Plaintiff stated a claim based on federal law (both Plaintiff and Approved are citizens of Hawaii).

On October 11, 2011, Plaintiff filed her SAC, asserting claims against only BONY, BANA, and BAC (Plaintiff declined to continue alleging claims against Approved).  The SAC asserts sixteen claims titled: (1) Violation of RESPA (Against BANA) (Count I); (2) Respondeat Superior Liability (Against BANA, BAC and BONY) (Count II); (3) Negligent or Wanton Hiring, Training or Retention (Against BANA, BAC and BONY) (Count III); (4) Negligent Misrepresentation (Against BANA, BAC, and Countrywide) (Count IV); (5) Civil Conspiracy (Against All Defendants) (Count V); (6) Breach of Contract (Against Countrywide, BANA, and BAC) (Count VI); (7) Breach of Fiduciary Duty (Against BANA, BAC, and Countrywide) (Count VII); (8) Common Law Fraud -

Concealment (Against BANA, BAC, and Countrywide) (Count VIII);

(9) Common Law Fraud - Inducement (Against BANA, BAC, and Countrywide)

(Count IX); (10) Unfair and Deceptive Acts and Practices - Hawaii Revised

Statutes ("HRS") § 480-2 (Against Countrywide, BAC, BANA, and BONY)

(Count X); (11) Improper Restrictions as a Result of Securitization (Against All

Defendants) (Count XI); (12) Wrongful Conversion of Note (Against All

Defendants) (Count XII); (13) The Note and Mortgage Are Unenforceable Because

the Mortgagor Never Consented to the Securitization (Against All Defendants)

(Count XIII); (14) The Restrictions Imposed Upon the Modification of the

Mortgage are a Clog Upon the Equity of Redemption (Against Defendants

Claiming Any Interest in the Subject Property) (Count XIV); (15) Quiet Title

(Against Defendants Claiming Any Interest in the Subject Property) (Count XV);

and (16) The Unenforceability of the Note and Mortgage Requires the Court to

Declare a Constructive Trust or Mortgage Trust (Against Defendants Claiming

Any Interest in the Subject Property) (Count XVI).

On October 28, 2011, Defendants filed their Motion to Dismiss the

SAC.  On January 9, 2012, Plaintiff filed her Opposition,[3] and Defendants filed a

---

[3]  Plaintiff also brought a Motion to Strike Defendants' Motion to Dismiss on the basis that Defendants failed to file Corporate Disclosure Statements or Initial Disclosure Statements. Plaintiff subsequently withdrew that Motion.

Reply on January 17, 2012.  A hearing was held on January 30, 2012.

### III. <u>STANDARDS OF REVIEW</u>

**A.      Rule 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss a claim for "failure to state a claim upon which relief can be granted[.]"

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, ___, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008).  This tenet -- that the court must accept as true all of the allegations contained in the complaint -- "is inapplicable to legal conclusions." *Iqbal*, 129 S. Ct. at 1949. Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.").

Rather, "[a] claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citing

*Twombly*, 550 U.S. at 556).  In other words, "the factual allegations that are taken

as true must plausibly suggest an entitlement to relief, such that it is not unfair to

require the opposing party to be subjected to the expense of discovery and

continued litigation." *Starr*, 652 F.3d at 1216.  Factual allegations that only permit

the court to infer "the mere possibility of misconduct" do not show that the pleader

is entitled to relief as required by Rule 8.  *Iqbal*, 129 S. Ct. at 1950.

## B.    Federal Rule of Civil Procedure 9(b)

Federal Rule of Civil Procedure 9(b) requires that "[i]n all averments

of fraud or mistake, the circumstances constituting fraud or mistake shall be stated

with particularity."  "Rule 9(b) requires particularized allegations of the

circumstances *constituting* fraud."  *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541,

1547-48 (9th Cir. 1994) (en banc) (emphasis in original), *superseded on other*

*grounds by* 15 U.S.C. § 78u-4.

In their pleadings, Plaintiffs must include the time, place, and nature

of the alleged fraud; "mere conclusory allegations of fraud are insufficient" to

satisfy this requirement.  *Id.* (citation and quotation signals omitted).  Where there

are multiple defendants, Plaintiffs cannot "lump multiple defendants together" and

instead must "differentiate their allegations [between defendants]."  *Destfino v. Kennedy*, 630 F.3d 952, 958 (9th Cir. 2011) (citation omitted).  However, "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally."  Fed. R. Civ. P. 9(b); *see also In re GlenFed, Inc. Sec. Litig*, 42 F.3d at 1547 ("We conclude that plaintiffs may aver scienter . . . simply by saying that scienter existed."); *Walling v. Beverly Enter.*, 476 F.2d 393, 397 (9th Cir. 1973) (Rule 9(b) "only requires the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." (citations omitted)).

A motion to dismiss for failure to plead with particularity is the functional equivalent of a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003).  In considering a motion to dismiss, the court is not deciding the issue of "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support claims."  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Harlow v. Fitzgerald,* 457 U.S. 800 (1982).

///

///

///

12

# IV. <u>DISCUSSION</u>

Over the last three years, this court has been flooded with numerous actions brought by mortgagors trying to stave off foreclosure.  As a result, this court has entered numerous orders outlining the pleading requirements for the various claims the court sees time and again.  Plaintiff's counsel is apparently aware of several of these orders -- Plaintiff argues that the SAC is similar to other cases that have survived motions to dismiss (without providing any substantive comparison),[4] and attempts to distinguish orders dismissing with prejudice the same claims that Plaintiff alleges in this action.  Given Plaintiff's awareness of the jurisprudence in this district, the court is at a loss as to why Plaintiff took a kitchen-sink approach to asserting claims against Defendants.  The court nonetheless proceeds to wade through each of Plaintiff's claims.

## A.     Violation of RESPA (Count I)

In support of Plaintiff's RESPA claim, the SAC asserts that BANA violated (1) 12 U.S.C. § 2605(e)(2) by failing and refusing to provide a written response to Plaintiff's QWRs; (2) 12 U.S.C. § 2605(e)(2) by refusing to cease

---

[4] In particular, Plaintiff argues that this case is similar to *Rundgren v. Bank of New York Mellon*, 777 F. Supp. 2d 1224 (D. Haw. 2011), in which the court denied a motion to dismiss plaintiff's HRS Ch. 480 claim.  Any cursory review of *Rundgren* reveals that Defendants challenged the Ch. 480 claim as time-barred, and did not challenge the sufficiency of the allegations.

collection efforts after receiving Plaintiff's QWR; and (3) 12 U.S.C. § 2605(e)(3) by "providing information to consumer reporting agencies regarding overdue payments allegedly owned by Plaintiff[] that were related to her QWR."  Doc. No. 60, SAC ¶¶ 68-70.  Defendants argue that these conclusory allegations fail to state a claim and in any event, Plaintiff has failed to allege damages.  The court addresses each of these arguments.

### 1.    *Failure to Provide a Complete Response to a QWR*

As the court already explained in this action once, *see Menashe*, 2011 WL 4527384, at *8-9, RESPA provides that "[i]f any servicer of a federally related mortgage loan receives a [QWR] from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days[.]" 12 U.S.C. § 2605(e)(1)(A).  A QWR is defined as:

> a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that: (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B).  "Servicing" is defined as:

> receiving any scheduled periodic payments from a
> borrower pursuant to the terms of any loan, including
> amounts for escrow accounts described in section 2609
> of this title, and making the payments of principal and
> interest and such other payments with respect to the
> amounts received from the borrower as may be required
> pursuant to the terms of the loan.

12 U.S.C. § 2605(i)(3).

After receiving the QWR, within sixty days, the loan servicer must, if

the servicer determines an error in the account, make appropriate corrections to the

borrower's account and notify the borrower of the correction in writing. 12 U.S.C.

§ 2605(e)(2) (A).  If the servicer determines that the account is not in error, the

servicer must provide the borrower with a written explanation or clarification

stating the reasons why the servicer believes the borrower's account is correct.  *Id.*

§ 2605(e)(2)(B).  If the request pertains to a request for information, the servicer

must either provide the information to the borrower or explain why such

information is unavailable.  *Id.* § 2605(e)(2)(C).

Defendants argue that BANA did not violate § 2605(e)(2) because

Plaintiff's letters do not qualify as QWRs, and in any event, BANA properly

responded to the letters.  As to Defendants' first argument, the court certainly

understands how they came to the conclusion that Plaintiff's letters do not qualify

as QWRs-- requests seeking information on the validity of the loan and mortgage

documents (such as documents relating to the original loan transaction and its

subsequent history) simply "do not fall within the confines of RESPA." *Junod v.*

*Dream House Mortg. Co.*, 2012 WL 94355, at *3 (C.D. Cal. Jan. 5, 2012) (citing

*Consumer Solutions REO, LLC v. Hillery*, 658 F. Supp. 2d 1002, 1014 (N.D. Cal.

2009) (dismissing RESPA claim with prejudice after observing that the

requirement "[t]hat a QWR must address the servicing of the loan, and not its

validity, is borne out by the fact that § 2605(e) expressly imposes a duty upon the

loan servicer, and not the owner of the loan")); *MorEquity, Inc. v. Naeem*, 118 F.

Supp. 2d 885, 901 (N.D. Ill. 2000) (dismissing a RESPA claim because

"[a]ccording to the allegations . . . , the letter sought information about the validity

of the loan and mortgage documents, but made no inquiry as to the status of the [ ]

account balance"); *see also Thurman v. Barclays Capital Real Estate Corp.*, 2011

WL 846441, at *4 (E.D. Cal. Mar. 7, 2011) ("A QWR must seek information

relating to the servicing of the loan; a request for loan origination documents is not

a QWR."); *Jones v. PNC Bank, N.A.*, 2010 WL 3325615, at *2 (N.D. Cal. Aug. 20,

2010) ("A QWR must seek information relating to the *servicing* of the loan; a

request for loan origination documents is not a QWR.").

   Plaintiff's December 21, 2009 letter requested "a 'certified' copy of

the original promissory note that was signed," and "a copy of the appraisal taken at

the time of the loan." Doc. No. 60-1, SAC Ex. 1. Because the information sought

was directed to loan origination and not the servicing of the loan, the December 21,

2009 letter does not qualify as a QWR under RESPA. The court therefore

GRANTS Defendants' Motion to Dismiss to the extent Count I asserts that the

December 21, 2009 was a QWR.

Plaintiff's March 18, 2010 letter also by and large requests

information on the validity of the loan and mortgage documents as opposed to

servicing. The March 18, 2010 letter is more akin to a clearly over-broad

discovery request than a good-faith QWR. Specifically, Plaintiff's December 21,

2009 letter seeks nineteen categories of documents including, among other things,

(1) all documents relating to the original loan transaction; (2) all purchase(s) and

sale(s) of the mortgage agreements and/or servicing rights; (3) all deeds; (4) all

canceled checks, money orders, drafts, debits, or credit notices issued to any

servicer for payment on the account or relating to the mortgage transaction;

(5) escrow analyses; (6) all documents evidencing payments on the account; (7) all

correspondence from BANA, its representatives, or previous servicers, to Plaintiff;

(8) all documents in Plaintiff's loan file; (9) all agreements between BANA and

vendors that have been paid from Plaintiff's account, the loan originator, and/or the

loan holder, lender, or trustee; and (10) all loan servicing records and documents

regarding the accounting of the loan.  Doc. No. 60-2, SAC Ex. 2.  Plaintiff's March 18, 2010 letter further requests that BANA identify the holder(s) of the note and mortgage, the mortgage broker, all fees provided to the mortgage broker, how the loan rates were calculated, the locations of originals of the loan file, the original promissory note, the current mortgagee, whether the loan is part of a mortgage pool, and any investors who have participated in any mortgage-backed security involving the mortgage loan.  *Id.*

As an initial matter, RESPA merely requires that in response to a QWR, a loan servicer must within sixty days "either provide the information to the borrower or explain why such information is unavailable."  12 U.S.C. § 2605(e)(2)(C).  To the extent Plaintiff suggests that RESPA allows a borrower to request, and forces a servicer to provide, any and all documents vaguely relating to servicing of the loan, the court rejects such proposition.  Rather, a servicer must provide information (not necessarily documents) "relating to servicing of" a loan, which in turn is defined as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan."  12 U.S.C. § 2605(i)(3).

Buried in the March 18, 2010 letter's nineteen requests for documents, however, are some requests that may plausibly be construed as seeking information regarding servicing -- the March 18, 2010 letter broadly seeks, among other things,

"all loan servicing records" and documents regarding payments made by Plaintiff.

Doc. No. 60-2, Pl.'s Ex. 2.  Given RESPA's relatively broad language that a QWR

must "include[] a statement of the reasons for the belief of *the borrower*, to the

extent applicable, that the account is in error *or provides sufficient detail to the*

*servicer regarding other information sought by the borrower*," *see* 12 U.S.C. §

2605(e)(1)(B) (emphasis added), the court cannot say at this time that Plaintiff's

March 18, 2010 letter at least in part, does not qualify as a QWR.  *See Tamburri v.*

*Suntrust Mortg., Inc.*, 2011 WL 6294472, at *7 (N.D. Cal. Dec. 15, 2011) (finding

that plaintiff sufficiently alleged that she made a QWR where she requested

"documents and documentation supporting [] collection and enforcement efforts"

and "any reporting of this account internally and to credit bureaus" because these

requests may relate to servicing of the loan); *DeVary v. Countrywide Home Loans,*

*Inc.*, 701 F. Supp. 2d 1096, 1108 (D. Minn. 2010) (recognizing that "[i]t is not

clear to the Court whether RESPA entitles a borrower to copies of specific internal

documents, or instead merely to the information that those documents contain," yet

finding that plaintiff may have stated a claim where servicer did not respond to

requests for documents); *Sam v. Am. Home Mortg. Servicing*, 2010 WL 761228, at

*3 (E.D. Cal. Mar. 3, 2010) (finding that where QWR requested "specific

documents related to the loan," plaintiff stated a sufficient violation of RESPA);

*But see Derusseau v. Bank of Am., N.A.*, 2011 WL 5975821, at *4 (S.D. Cal. Nov. 29, 2011) (finding that requests for broad categories of documents relating to the loan "does not assist BAC to identify and investigate the purported discrepancies" and therefore "are not covered by section 2605"); *Dietz v. Beneficial Loan & Thrift Co.*, 2011 WL 2412738, at *4 (D. Minn. June 10, 2011) (granting motion to dismiss RESPA claim where plaintiff requested documents relating to the servicing of the loan, but "did not identify any reasons for a belief that the account (or payment history) is in error").

That the March 18, 2010 letter may qualify as a QWR, however, does not end the analysis.  A violation of § 2605(e)(2) occurs only if, after receiving a QWR, a loan servicer fails within sixty days to "either provide the information to the borrower or explain why such information is unavailable."  As to this element of Plaintiff's RESPA claim, the SAC asserts that BANA "fail[ed] and refus[ed] to provide a proper written explanation or accurate and complete response to Plaintiff's QWR," Doc. No. 60, SAC ¶ 68, but includes no factual allegations establishing the plausibility of this claim.  Where (1) the March 18, 2010 letter requested a broad range of documents that went well beyond the limited subject matter of a valid QWR, (2) BANA apparently did provide servicing information to

Plaintiff in an April 6, 2010 letter (well before RESPA's 60-day time period),[5] and

(3) the SAC lacks *any* specificity as to how BANA's April 16, 2010 response was

insufficient in response to a QWR, the court finds that the SAC fails to provide

notice to Defendants of what *servicing* information BANA allegedly failed to

timely provide Plaintiff that is the basis of this claim.  The court therefore

GRANTS Defendants' Motion to Dismiss Plaintiff's RESPA claim for violation of

§ 2605(e)(2) to the extent based on BANA's alleged failure to properly respond to

a QWR.

### 2.    *Providing Information to Consumer Reporting Agencies*

As to a servicer's collection efforts while processing a QWR, RESPA

provides:

> During the 60-day period beginning on the date of the
> servicer's receipt from any borrower of a qualified
> written request relating to a dispute regarding the
> borrower's payments, a servicer may not provide
> information regarding any overdue payment, owed by
> such borrower and relating to such period or qualified
> written request, to any consumer reporting agency (as
> such term is defined under section 1681a of Title 15).

12 U.S.C. § 2605(e)(3).

---

[5]  BANA's April 6, 2010 letter states that it provided Plaintiff (1) "a summary of the subject loan," and (2) a "Loan Transaction History Statement" giving a detailed outline of the transactions associated with Plaintiff's loan including "information on payments received, tax and insurance payments disbursed, funds in the suspense/unapplied funds balance, and late fees assessed and paid."  Doc. No. 60-3, Pl.'s Ex. 3.

The court recognizes that the SAC generally alleges that BANA "provid[ed] information to consumer reporting agencies regarding overdue payments allegedly owed by Plaintiff[]," Doc. No. 60, SAC ¶ 70, but this allegation, on its own, is insufficient to assert a violation of § 2605(e)(3) -- it is wholly conclusory and fails to describe when and to whom BANA allegedly provided the information. *See, e.g.*, *Midouin v. Downey Sav. & Loan Ass'n, F.A.*, --- F. Supp. 2d ----, 2011 WL 4529646, at *10 (E.D.N.Y. Sept. 28, 2011) (dismissing claim where plaintiff failed to allege when the servicer provided information to a consumer reporting agency); *Jones v. Select Portfolio Servicing, Inc.*, 2008 WL 1820935, at *10 (E.D. Pa. Apr. 22, 2008) (dismissing claim under § 2605(e)(3) where plaintiff "makes no allegation that Defendant reported any information regarding Plaintiff's loan to any consumer reporting agency at any time, let alone within the requisite sixty day period for a RESPA violation").[6]

But BANA's April 10, 2010 letter, attached to and described by the SAC, provides more details regarding this allegation.  BANA's April 10, 2010 letter provides that "a credit block was placed while the issues in your letter were

---

[6] The court also recognizes that the SAC arguably fails to state a claim because Plaintiff's QWR merely requested information (or, more precisely, documents) regarding servicing of her loan; the letter did not appear to raise any "dispute regarding [Plaintiff's] payments" as required by § 2605(e)(3).  Because the parties did not raise this issue in their briefs, the court declines to address it further.

addressed," and that BANA "will not remove the negative credit reporting from our customer's credit file."  Doc. No. 60-3, SAC Ex. 3.  Neither party describes precisely what a "credit block" is and/or whether it is the "negative reporting" in Plaintiff's credit file.  Read in a light most favorable to Plaintiff, however, a fair interpretation is that after BANA received Plaintiff's March 18, 2010 letter (arguably containing a QWR), it reported negative information to credit reporting agencies.  The court finds that these additional facts are sufficient to state a claim and therefore DENIES Defendants' Motion to Dismiss Plaintiff's RESPA claim for violation of § 2605(e)(3).

### 3. *Refusing to Cease Collection Efforts after Receiving Plaintiff's QWR*

Defendants argue that Plaintiff's claim that BANA violated RESPA by "refusing to cease in its collection efforts after receiving Plaintiff['s] QWR," Doc. No. 60, SAC ¶ 69, is too conclusory to state a claim that is valid on its face.  The court agrees.

As an initial matter, § 2605(e) on its face includes no requirement that a servicer cease collection efforts.  Rather, after receiving the QWR, within sixty days, the loan servicer must either (1) make appropriate corrections to the borrower's account and notify the borrower of the correction in writing, 12 U.S.C. § 2605(e)(2) (A), (2) provide the borrower with a written explanation or

clarification stating the reasons why the servicer believes the borrower's account is correct, *id.* § 2605(e)(2)(B), or (3) provide the information to the borrower or explain why such information is unavailable.  *Id*. § 2605(e)(2)(C).  Second, even if Plaintiff could state a claim for failure to cease collection efforts, Plaintiff provides no facts suggesting that BANA did indeed continue collection efforts during the 60-day period -- the SAC does not allege what collection efforts BANA took and when they occurred.  The court therefore GRANTS Defendants' Motion to Dismiss Plaintiff's RESPA claim for failure to cease collection efforts upon receiving a QWR.

### 4.    *Failure to Allege Damages*

As the court already explained, *see Menashe*, 2011 WL 4527384, at *9, pursuant to 12 U.S.C. § 2605(f)(1), Plaintiff has a burden to plead and demonstrate she has suffered damages.  Section 2605(f)(1) provides:

> Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts:
> (1)  Individuals
>      In the case of any action by an individual, an amount equal to the sum of --
>      (A) any actual damages to the borrower as a result of the failure; and
>      (B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $1,000.

24

Because damages are a necessary element of a RESPA claim, failure to plead damages is fatal to a RESPA claim. *See, e.g.*, *Esoimeme v. Wells Fargo Bank*, 2011 WL 3875881, at *14 (E.D. Cal. Sept. 1, 2011) (dismissing claim where the plaintiff failed to "allege any pecuniary loss from defendant's alleged failure to respond to the QWR"); *Soriano v. Countrywide Home Loans, Inc.*, 2011 WL 1362077, at *6 (N.D. Cal. Apr. 11, 2011) (reasoning that "even if a RESPA violation exists, Plaintiff must show that the losses alleged are causally related to the RESPA violation itself to state a valid claim under RESPA"); *Shepherd v. Am. Home Mortg. Servs.*, 2009 WL 4505925, at *3 (E.D. Cal. Nov. 20, 2009) ("[A]lleging a breach of RESPA duties alone does not state a claim under RESPA. Plaintiff must, at a minimum, also allege that the breach resulted in actual damages." (quoting *Hutchinson v. Del. Sav. Bank FSB*, 410 F. Supp. 2d 374, 383 (D. N.J. 2006))).

The requirement that a plaintiff plead damages is interpreted "liberally." *Shepherd*, 2009 WL 4505925, at *4. With that said, however, "the plaintiff must at least allege what or how the plaintiff suffered the pecuniary loss." *Ash v. OneWest Bank, FSB*, 2010 WL 375744, at *6 (E.D. Cal. Jan. 26, 2010).

The court finds that Plaintiff has sufficiently alleged that she suffered damages -- although the SAC generally asserts that Plaintiff "suffered and

25

continue[s] to suffer damages and costs of suit," Doc. No. 60, SAC ¶ 71, it further

asserts that "Plaintiff's credit has been damaged," *id.* ¶ 46, and that BANA placed

a "credit block" on her account while responding to Plaintiff's requests for

information. *Id.* ¶ 46. Moreover, BANA's April 6, 2010 letter suggests that it

placed "negative credit reporting" on Plaintiff's credit file. Doc. No. 60-3, SAC

Ex. 3. These allegations state a plausible claim for damages. *See also Hutchinson*

*v. Del. Sav. Bank FSB*, 410 F. Supp. 2d 374, 383 (D. N.J. 2006) (holding that the

plaintiffs adequately pled actual damages when they alleged that they suffered

"negative credit ratings on their credit reports [and] the inability to obtain and

borrow another mortgage loan and other financing").

      In sum, the court GRANTS in part and DENIES in part Defendants'

Motion to Dismiss Count I. Plaintiff's RESPA claim for violation of § 2605(e)(3)

remains.

## B.    **Respondeat Superior Liability (Count II)**

      The SAC asserts that Defendants are liable for all of the improper

actions of Countrywide because "[a]s a successor in interest to COUNTRYWIDE,

Defendant BOA and BAC have hired, directed and controlled the actions of

COUNTRYWIDE in its capacity as originator broker of the mortgage loan in this

case," and "engaged in a civil conspiracy to engage in conduct which is unlawful

for the purpose of unjustly enriching" the members of the conspiracy.  Doc. No. 60, SAC ¶¶ 74-76.

Defendants argue, and the court agrees, that this claim fails to state a claim upon which relief can be granted.  "Under the doctrine of respondeat superior, an employer is held vicariously liable for the negligent acts of an [agent or] employee committed while the employee was acting within the scope of the employer's business."  *Yamane v. Pohlson*, 111 Haw. 74, 78 n.7, 137 P.3d 980, 984 n.7 (2006) (citing *State v. Hoshijo ex rel. White*, 102 Haw. 307, 319, 76 P.3d 550, 562 (2003)); *see also Hoshijo ex rel. White*, 102 Haw. at 318, 76 P.3d at 561 (stating that an entity is liable for an agent's or employee's actions acting within the scope of his authority).  The SAC includes absolutely no factual allegations explaining how the doctrine of respondeat superior would apply in this case -- there are no allegations that Defendants and Countrywide had any type of employer/employee or agency relationship.  Indeed, the SAC asserts that BANA is simply the successor to Countrywide, Doc. No. 60, SAC ¶ 4 (asserting that Bank of America Corp. acquired Countrywide and changed Countrywide's name to BANA), and Plaintiff's Opposition acknowledges this fact as well.  *See* Doc. No. 67, Pl.'s Opp'n at 17 (asserting that Defendants controlled the actions of Countrywide "as successors in interest").  Thus, any claim asserting respondeat

27

superior liability between Countrywide on the one hand and Defendants on the other fails as a matter of law.

In opposition, Plaintiff does not address the actual allegations of the SAC (*i.e.*, that this Count asserts respondeat superior liability between Countrywide and Defendants), and instead appears to suggest that references to Countrywide, the lender, are a short-hand way of referring to Approved, the mortgage broker. Specifically, Plaintiff contends that Approved was an agent of Countrywide such that Countrywide should be held vicariously liable for Approved's alleged misconduct in obtaining the mortgage loan for Plaintiff. In offering this theory, Plaintiff ignores one major hole in her argument -- the SAC does not include any allegations even *suggesting* the plausibility that Approved is Countrywide's agent.

In general, a lender is not liable for the actions of a mortgage broker unless there "there is an agency relationship between the lender and the broker." *Gonzalez v. First Franklin Loan Servs.*, 2010 WL 144862, at *13 (E.D. Cal. Jan. 11, 2010); *see also Kennedy v. Wells Fargo Bank, N.A.*, 2011 WL 3359785, at *2 n.5 (N.D. Cal. Aug. 2, 2011) (noting that mortgage broker is generally an agent of the borrower, and not that of the lender, unless there is an agency relationship); *Mangindin v. Wash. Mut. Bank*, 637 F. Supp. 2d 700, 710 (N.D. Cal. 2009)

28

(explaining that "courts have rejected a bright line rule that a mortgage broker may never be the agent of a lender").

Under Hawaii law, "[a]n agency relationship may be created through actual or apparent authority." *See Hoshijo ex rel. White*, 102 Haw. at 318, 76 P.3d at 561 (quoting *Cho Mark Oriental Food, Ltd. v. K & K Int'l*, 73 Haw. 509, 515, 836 P.2d 1057, 1061 (1992)).  To establish actual authority, there must be "a manifestation by the principal to the agent that the agent may act . . . , and may be created by *express agreement or implied from the conduct of the parties or surrounding circumstances*.'"  *Id.* (quoting *State Farm Fire & Cas. Co. v. Pac. Rent-All, Inc.*, 90 Haw. 315, 325, 978 P.2d 753, 763 (1999)).  In comparison, "[a]pparent authority  arises when 'the principal does something or permits the agent to do something which reasonably leads another to believe that the agent had the authority he was purported to have.'"  *Cho Mark Oriental Food, Ltd.*, 73 Haw. at 515, 836 P.2d at 1061 (quoting *Hawaiian Paradise Park Corp. v. Friendly Broad. Co.*, 414 F.2d 750, 756 (9th Cir. 1969)).

Plaintiff has pled no facts whatsoever plausibly suggesting that any type of agency relationship existed between Approved and Countrywide, whether based on actual or apparent authority.  *See, e.g.*, *Sipe v. Countrywide Bank*, 690 F. Supp. 2d 1141, 1156 (E.D. Cal. 2010) (dismissing claim for breach of fiduciary

29

duty where plaintiff failed to allege any facts suggesting an agency relationship

between the broker and lender); *Sandry v. First Franklin Fin. Corp*., 2011 WL

202285, at *3 (E.D. Cal. Jan. 20, 2011) (dismissing fraud claim against lender

where allegations were directed to misdeeds of mortgage broker and conclusory

allegations of agency were insufficient).  Indeed, Plaintiff has not pled facts

establishing *any* type of relationship between Approved and Countrywide, much

less any type of relationship that would hold Countrywide vicariously liable for

Approved's actions.

     The court therefore GRANTS Defendants' Motion to Dismiss Count

II.

## C.     Negligent or Wanton Hiring, Training or Retention (Count III)

     The SAC asserts that Defendants "negligently or wantonly hired

trained and supervised or retained" Countrywide and "various fictitious

defendants" such that Defendants are liable for all damages caused by

Countrywide.  Doc. No. 60, SAC ¶¶ 79-81.

     This claim fails for several reasons.  First, for all the reasons described

above as to Plaintiff's respondeat superior claim, Defendants did not have an

employer/employee and/or agency relationship with Countrywide; rather,  BANA

is the successor to Countrywide.  Plaintiff's Opposition confirms this fact by

asserting her new theory of liability -- that Countrywide had an agency relationship

with Approved and failed to properly supervise it.  *See* Doc. No. 67, Pl.'s Opp'n at

19.  As explained above, however, the SAC includes no allegations that

Countrywide failed to properly supervise Approved, much less any allegations

explaining the relationship between Countrywide and Approved that would impute

Approved's conduct on Countrywide.[7]  *See, e.g.*, *Newsom v. Countrywide Home*

*Loans, Inc.*, 714 F. Supp. 2d 1000, 1013 (N.D. Cal. 2010) (dismissing fraud claim

against lender because there was no basis to impute representations or omissions

by mortgage broker onto lender); *Champlaie v. BAC Home Loans Servicing, LP*,

706 F. Supp. 2d 1029, 1056 (E.D. Cal. 2009) (dismissing claim that Countrywide

was vicariously liable for mortgage broker's activities where the plaintiff "has not

alleged facts indicating that [Countrywide] exercised the requisite control over the

brokers' activities").

> The court GRANTS Defendants' Motion to Dismiss Count II.

## D.    Negligent Misrepresentation (Count IV)

> In support of Plaintiff's negligent misrepresentation claim, the SAC

asserts that Countrywide convinced Plaintiff to rely on a prior appraisal of the

---

[7] Plaintiff further suggests that because Approved has dissolved, Plaintiff should be able to recover damages from Countrywide.  *See* Doc. No. 67, Pl.'s Opp'n at 19.  That Approved has dissolved, however, provides no legal basis for holding Defendants liable for Approved's alleged wrongs.

subject property that included many misrepresentations inflating the value of the subject property, causing Plaintiff to enter into the loan and sustain damages.  Doc. No. 60, SAC ¶¶ 83-86.

Defendants argue that this claim is not plead with particularity pursuant to Rule 9(b).  Rule 9(b), however, does not apply to a negligent misrepresentation claim under Hawaii law -- "[a] negligent misrepresentation claim does not require intent, and accordingly is not subject to Rule 9(b)."  *Hele Ku KB, LLC v. BAC Home Loans Servicing, LP*, 2011 WL 5239744, at *10 (D. Haw. Oct. 31, 2011) (citing *Peace Software, Inc. v. Hawaiian Elec. Co.*, 2009 WL 3923350, at *8 (D. Haw. Nov. 17, 2009); *Bush v. Rewald*, 619 F. Supp. 585, 608 (D. Haw. 1985); *see also Smallwood v. NCsoft Corp.*, 730 F. Supp. 2d 1213, 1231-32 (D. Haw. 2010).  As explained in *Peace Software, Inc.*, although some Ninth Circuit cases state that negligent misrepresentation claims are subject to Rule 9(b), those cases interpreted California law; in comparison, "the Hawaii Supreme Court does not appear to [equate] negligent misrepresentation with fraud."  *Peace Software*, 2009 WL 3923350, at *6.

The court finds that the pleading requirements of Rule 9(b) do not apply to Count IV of the SAC.  Although Defendants argue that this claim asserts fraudulent, as opposed to negligent misrepresentations, the court disagrees.  A

fraud claim requires a plaintiff to establish, among other things, that the defendant *knew* its representations were false, *see Shoppe v. Gucci Am., Inc.*, 94 Haw. 368, 386, 14 P.3d 1049, 1067 (2000), whereas a negligent misrepresentation claim requires that the "false information be supplied as a result of the failure to exercise reasonable care or competence in communicating the information." *Assoc. of Apartment Owners of Newtown Meadows ex rel. its Bd. of Dirs. v. Venture 15, Inc.*, 115 Haw. 232, 263, 167 P.3d 225, 256 (2007).  The SAC does not plead that Countrywide *knew* that the appraisal was false; rather, the SAC simply asserts that the representations in the appraisal "were made without a reasonable basis to believe them."  Doc. No. 60, SAC ¶ 85.  Thus, this claim need not meet the heightened pleading requirements of Rule 9(b).[8]

The court therefore DENIES Defendants' Motion to Dismiss Count IV of the SAC.

## E.    Civil Conspiracy (Count V)

In support of Plaintiff's civil conspiracy claim, the SAC asserts:

88.    [Defendants] engaged in an unlawful combination

---

[8]  Although Defendants raise a number of new arguments in their Reply, the court does not address arguments raised for the first time in Reply.  *See, e.g.*, *Hi-Tech Rockfall Constr., Inc. v. Cnty. of Maui*, 2009 WL 529096, at *18 n.9 (D. Haw. Feb. 26, 2009) ("Local Rule 7.4 provides that '[a]ny arguments raised for the first time in the reply shall be disregarded.' "); *Coos Cnty. v. Kempthorne*, 531 F.3d 792, 812 n.16 (9th Cir. 2008) (declining to consider an argument raised for the first time in a reply brief).

and conspiracy to originate mortgage loans through a
pattern and practice of predatory lending, stated income
and inflated appraisals to conceal this unlawful activity
for purposes of unjustly enriching the joint venture of the
conspirators.

89.   To accomplish the purposes of the civil conspiracy
the members of the conspiracy engaged in conduct
against the Plaintiff as set out herein, which includes
actions that give rise to claims against [Defendants] of
negligence, wantonness, suppression, unjust enrichment,
forgery, unfair and deceptive acts and practices and
actions which violate regulatory guidance promulgated
by national banking in lending authorities. . . .

Doc. No. 60, SAC ¶¶ 88-89.

Under Hawaii law, "'the accepted definition of a conspiracy is a

combination of two or more persons [or entities] by concerted action to accomplish

a criminal or unlawful purpose, or to accomplish some purpose not in itself

criminal or unlawful by criminal or unlawful means.'" *Annan-Yartey v. Honolulu*

*Police Dep't*, 475 F. Supp. 2d 1041, 1050 (D. Haw. 2007) (quoting *Robert's Haw.*

*Sch. Bus, Inc. v. Laupahoehoe Transp. Co.*, 91 Haw. 224, 252, 982 P.2d 853, 881

(1999)).  Because "there can be no civil claim based upon a conspiracy alone,"

*Weinberg v. Mauch*, 78 Haw. 40, 49, 890 P.2d 277, 286 (1995), a plaintiff must

allege an underlying actionable claim.  *See Ellis v. Crockett*, 51 Haw. 45,

57-58, 451 P.2d 814, 822-23 (1969) (the plaintiffs' failure to allege an underlying

claim of deceit precluded them from alleging conspiracy to deceive).  A civil

34

conspiracy claim therefore has three elements: "(1) the formation of a conspiracy; (2) wrongful conduct in furtherance of the conspiracy, *i.e.*, an actionable claim based upon deceit; and (3) damage." *Young v. Bishop Estate*, 2009 WL 3763029, at *14 (D. Haw. Nov. 6, 2009).

Plaintiff has merely recited the elements of a conspiracy claim as opposed to any factual allegations establishing the plausibility of this claim. Further, to the extent these claims relate to alleged fraudulent conduct by Defendants, Plaintiff has failed to plead the circumstances of fraud and conspiracy with the required particularity. *See Swartz v. KPMG LLP*, 476 F.3d 756, 765 (9th Cir. 2007) ("Rule 9(b) imposes heightened pleading requirements where the object of the conspiracy is fraudulent." (citation and internal quotation marks omitted)). The court GRANTS Defendants' Motion to Dismiss Count V.

## F.    Breach of Contract (Count VI)

In support of Count VI, the SAC alleges:

92.    COUNTRYWIDE, now Defendant BOA and BAC, expressly and impliedly promised the Plaintiff that they would secure for her a mortgage loan available with an implied duty of good faith and fair dealing.
93.    COUNTRYWIDE failed to act in good faith to act fairly when they inaccurately and intentionally completed the Federal Loan Application for the Plaintiff.  In fact if the Plaintiff earned over $12,500 per month as COUNTRYWIDE over stated on the Federal Loan Application why would COUNTRYWIDE qualify the

Plaintiff for negative amortization loan that the Plaintiff could barely afford with her [] real and verifiable income. In fact by obtaining a negative amortization loan for the Plaintiff, Defendants COUNTRYWIDE created the impression that the loan could easily be affordable when in reality the type of loan the Defendants gave the Plaintiff actually created a higher yield spread premium for Countrywide.

94.     As a direct result of COUNTRYWIDE now Defendants BOA and BAC's breach of contract, the Plaintiff continues to suffer considerable damages[.]

Doc. No. 60, SAC ¶¶ 92-94.

Defendants argue that despite this claim being labeled a breach of contract claim, Plaintiff is actually asserting a claim for breach of the covenant of good faith and fair dealing, which fails as a matter of law.  The court agrees.

As an initial matter, despite its title, this Count does not appear to state a claim for breach of contract and even if construed as such, it fails to state a claim. Plaintiff fails to allege even the basic elements of a breach of contract claim, much less the factual allegations to support it.  Completely missing from this Count is any mention of the particular contract at issue, the particular provision that Countrywide allegedly violated, and whether Plaintiff performed.  *See, e.g.*, *Velez v. The Bank of New York Mellon*, 2011 WL 572523, at *3 (D. Haw. Feb. 15, 2011) (explaining that a breach of contract claim requires a plaintiff to identify (1) the contract at issue; (2) the parties to the contract; (3) whether Plaintiff performed

36

under the contract; (4) the particular provision of the contract allegedly violated by the Defendant; (5) when and how the Defendant allegedly breached the contract; and (6) how Plaintiff was injured).

Given the allegations that Countrywide failed "to act in good faith to act fairly," it appears that Plaintiff has actually alleged a claim for bad faith. But as this court has explained in numerous previous orders, *see, e.g.*, *Teaupa v. U.S. Nat'l Bank N.A.*, 2011 WL 6749813, at *5 (D. Haw. Dec. 22, 2011), the tort of bad faith has not been recognized in Hawaii based upon a mortgage loan contract. *See Jou v. Nat'l Interstate Ins. Co. of Haw.*, 114 Haw. 122, 129, 157 P.3d 561, 568 (Haw. App. 2007) (explaining that "the Hawaii Supreme Court emphasized that the tort of bad faith, as adopted in [*Best Place v. Penn Am. Ins. Co.*, 82 Haw. 120, 128, 920 P.2d 334, 342 (1996),] requires a contractual relationship between an insurer and an insured" (citations omitted)). Moreover, although commercial contracts for "sale of goods" also contain an obligation of good faith in their performance and enforcement, this obligation does not create an independent cause of action. *See Stoebner Motors, Inc. v. Automobili Lamborghini S.P.A* ., 459 F. Supp. 2d 1028, 1037-38 (D. Haw. 2006). And Hawaii courts have noted that "[o]ther jurisdictions recognizing the tort of bad faith . . . limit such claims to the insurance context or situations involving special relationships characterized by elements of fiduciary

37

responsibility, public interest, and adhesion." *Id*. at 1037 (quoting *Francis v. Lee Enters.*, 89 Haw. 234, 238, 971 P.2d 707, 711 (1999)).

Importantly, even assuming a bad faith tort exists outside the insurance context, it is well-settled that "[a] party cannot breach the covenant of good faith and fair dealing before a contract is formed." *Contreras v. Master Fin., Inc.*, 2011 WL 32513, at *3 (D. Nev. Jan. 4, 2011) (citing *Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc.*, 157 F.3d 933, 941 (2d Cir. 1998) ("[A]n implied covenant relates only to the performance of obligations under an extant contract, and not to any pre-contract conduct.")).  Hawaii follows this distinction.  *See Young v. Allstate Ins. Co.*, 119 Haw. 403, 427, 198 P.3d 666, 690 (2008) (indicating the covenant of good faith does not extend to activities occurring before consummation of an insurance contract).

Because all of Count VI's allegations concern pre-contract activities (failing to accurately fill out the loan application and making an improper loan to Plaintiff), Defendants cannot be liable for bad faith.  *See id.*; *see also Larson v. Homecomings Fin., LLC*, 680 F. Supp. 2d 1230, 1237 (D. Nev. 2009) ("Because Plaintiffs' claim revolves entirely around alleged misrepresentations made before the [mortgage loan] contract was entered into, [the bad faith claim] fails as a matter of law.").  The court therefore GRANTS Defendants' Motion to Dismiss Count VI.

### G.  Breach of Fiduciary Duty (Count VII)

Count VII asserts that Plaintiff retained Countrywide as her agent to obtain the most affordable mortgage such that Countrywide owed Plaintiff a "fiduciary duty of the highest degree of loyalty diligence and fidelity," and that Countrywide breached this duty during the loan consummation through various misdeeds.  Doc. No. 60, SAC ¶¶ 96-110.

These allegations fail to state a claim against Defendants.  As explained in *McCarty v. GCP Mgmt., LLC*, 2010 WL 4812763, at *5 (D. Haw. Nov. 17, 2010), this court follows the well-settled proposition that a borrower-lender relationship is not fiduciary in nature absent some special circumstances. *See also Anderson v. Cent. Pac. Home Loans, Inc*., 2011 WL 3439939, at *6 (D. Haw. Aug. 8, 2011) ("Unless a special relationship exists between a borrower and lender that elevates the lender's responsibility, the standard 'arms-length business relationship' applies." (citing *Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 883 (9th Cir. 2007)); *Solomon v. E-Loan, Inc*., 2011 WL 1253840, at *7 (E.D. Cal. Mar. 30, 2011) ("The relationship between a lending institution and its borrower-client is not fiduciary in nature." (citing California law)).

The SAC alleges no "special circumstances" that might impose a fiduciary duty in this mortgage-lending situation against Defendants.  *See, e.g.*,

*Anderson*, 2011 WL 3439939, at *6 (dismissing claim because "Plaintiff makes no allegations suggesting that his relationship to Defendants is anything other than an ordinary, arms-length, lender-borrower relationship"); *Enriquez v. Countrywide Home Loans, FSB*, --- F. Supp. 2d ----, 2011 WL 3861402, at *21 (D. Haw. Aug. 31, 2011) (dismissing claim where Plaintiff failed to plead facts "regarding an inequality of bargaining power that would constitute special circumstances beyond the traditional borrower-lender relationship"); *see also Fujikawa v. One West Bank, FSB*, 2011 WL 3021331, at *6 (D. Haw. July 21, 2011) ("Bald assertions in the Complaint that a fiduciary duty exists fail to satisfy the requirements of Federal Rules of Civil Procedure 8 and 12(b)(6)."); *Goya v. Wells Fargo Bank, N.A.*, 2011 WL 2559830, at *3 (D. Haw. June 27, 2011) ("Simply stating that Defendants 'breached their fiduciary duties to Plaintiff' is insufficient to establish the existence of a fiduciary duty.").

In opposition, Plaintiff acknowledges that lenders do not generally owe a fiduciary duty to the borrowers, yet argues that Approved owed Plaintiff a fiduciary duty as Plaintiff's mortgage broker and such duty is imputed to Countrywide on the basis of respondeat superior.  As explained above, however, the court rejects that Plaintiff has pled the existence of any agency relationship between Approved and Countrywide.  The court therefore GRANTS Defendants'

Motion to Dismiss Count VII.

## H.    Fraudulent Concealment and Inducement (Counts VIII and IX)

Count VIII asserts that Countrywide fraudulently obtained the

mortgage loan by (1) overstating Plaintiff's income in the loan application,

(2) approving the loan based solely on stated income, (3) extending credit based on

the liquidated value of the subject property, and (4) failing to obtain an appraisal of

the subject property.  Doc. No. 60, SAC ¶¶ 112-17.  Count IX similarly asserts that

Defendants committed fraud by (1) providing Plaintiff an inaccurate Good Faith

Estimate, (2) completing the loan application with false income information, (3)

failing to provide an appraisal, and (4) assuring Plaintiff that they had procured an

affordable loan.  *Id.* ¶¶ 121-23.

These allegations do not meet Plaintiff's burden under Rule 9(b) -- the

allegations are conclusory and "fail to assert 'particularized allegations of the

circumstances *constituting* fraud' . . . such as the time, place, and nature of the

alleged actions, and how each Defendant participated in the fraud."  *Chun v.*

*Accredited Home Lenders, Inc.*, 2011 WL 3273120, at *4 (D. Haw. July 29, 2011)

(quoting *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d at 1547-48).  As to Count VIII,

although the SAC asserts that Countrywide made various misrepresentations and

omissions, it is unclear when and where they occurred and how the other

Defendants participated in this fraud.  Count IX does no better, lumping all the

Defendants together such that each Defendant's role in this fraud is unclear.

Further, as this court explained in *Long v. Deutsche Bank Nat'l Trust

Co.*, 2011 WL 5079586, at *8 (D. Haw. Oct. 24, 2011), pleading fraud with

particularity is necessary because whether false representations in the loan

application process "can state a viable claim for fraudulent misrepresentation or

fraudulent inducement will depend on *whose* conduct is at issue, to *whom* false

representations were made, and under *what* circumstances."  For example,

falsification of loan application materials is generally "intended to induce action on

the part of the *lender*, rather than [Plaintiff]," *id.* (quoting *Infante v. Bank of Am.

Corp.*, 680 F. Supp. 2d 1298, 1304 (S.D. Fla. 2009)), and it is unclear how the

fraudulent conduct at issue induced reliance by Plaintiff (*e.g.*, was she aware of the

false statements and if so, how did she rely on them?).

Plaintiff's Opposition confirms that these allegations have not been

pled with particularity.  Specifically, Plaintiff again offers up her new theory for

these claims that Approved made the various false statements, and that

Countrywide, BANA, and BAC are liable through respondeat superior.  Doc. No.

67, Pl.'s Opp'n at 26-29.  Such facts are not pled in support for these claims, and as

explained above, Plaintiff has not pled any agency relationship between

42

Countrywide and Approved.  Further, even if Plaintiff had pled that Approved was the entity making the fraudulent misrepresentations, then Plaintiff would still need to plead how the actions of Approved were directed to induce Plaintiff, as opposed to Countrywide, to take certain actions.

The court therefore GRANTS Defendants' Motion to Dismiss Counts VIII and IX.

## I.      Unfair and Deceptive Acts and Practices -- HRS § 480-2 (Count X)

Count X asserts that Defendants failed to disclose various "facts, circumstances and risks" to Plaintiff to hide the actual payment schedule and loan amount.  Doc. No. 60, SAC ¶ 132.  The SAC further asserts that Defendants engaged in "predatory lending" by failing to disclose all material terms and using "unfair fraudulent and unconscionable" acts including (1) targeting borrowers who are "vulnerable to abusive practices" or could otherwise qualify for mainstream loans, (2) using a teaser rate that ensures negative amortization, (3) stripping equity from the loan through repeated refinancing, (4) failing to warn Plaintiff that "consolidating unsecured debt into [a] mortgage loan secured by [a] home is a bad idea," (5) paying a yield spread premium to the broker for a higher interest rate and not disclosing this amount to the borrower; (6) qualifying Plaintiff for only the initial teaser rate and not the fully amortized rate; (7) using only stated income

instead of verified financials, and (8) soliciting a more expensive loan than what Plaintiff could have qualified for.  *Id.* ¶¶ 131-35.

Plaintiff's § 480-2 claim appears to be based at least partly on allegedly fraudulent conduct by Defendants, yet Count X is not plead with the requisite particularity.  Specifically, where a Chapter 480 claim is based on fraudulent acts, a plaintiff must plead the claim with particularity.  *See Smallwood*, 730 F. Supp. 2d at 1232-33 (relying on *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1122 (9th Cir. 2009), to find that HRS Ch. 480 claims that sound in fraud must be pled with particularity).  As pled, at least some of Plaintiff's allegations in support of her Chapter 480 claim sound in fraud -- she asserts that Defendants had knew of material facts and did not disclose them to Plaintiff, "deceptively preyed upon Plaintiff," and offered Plaintiff a loan that was "unfair fraudulent and unconscionable."  Doc. No. 60, SAC ¶¶ 132-36.  Although at least part of Plaintiff's claim sounds in fraud, the actual allegations as to Defendants' conduct are so vague that the court cannot determine what acts Plaintiff alleges are fraudulent.  None of the allegations asserts "particularized allegations of the circumstances constituting fraud" such as the time, place, and nature of the alleged fraud, and how each Defendant participated in the fraud.  *See In re GlenFed, Inc. Sec. Litig.*, 42 F.3d at 1547-48.  That is, Plaintiff's allegations appear to sound at

44

least partly in fraud, yet fail to meet Rule 9(b)'s particularity requirement.

The court GRANTS Defendants' Motion to Dismiss Count X.

## J.   Improper Securitization of the Loan (Counts XI-XIV)

Counts XI through XIV of the SAC assert claims directed to the fact that the subject loan was securitized.  Count XI alleges that (1) the mortgage is a security agreement and may not be modified by one party without written consent of the other; and (2) Defendant unilaterally changed the terms of Plaintiff's mortgage when the mortgage was placed under a servicing and pooling agreement. Doc. No. 60, SAC ¶¶ 139-43.  Count XII asserts that the "securitization of the note is a conversion rendering it null, void and unenforceable."  *Id.* ¶ 145.  Count XIII asserts that securitization of the loan separated control over the mortgage and the decision to foreclose from the note holder without Plaintiff's consent.  *Id.* ¶¶ 151-52.  Finally, Count XIV asserts that securitization restricts the ability modify the mortgage, interfering with Plaintiff's right to redeem the subject property.  *Id.* ¶¶ 155-56.

These claims fail to state a claim upon which relief can be granted. This court has addressed similar claims in other cases, *see Long v. Deutsche Bank Nat'l Trust Co.*, 2011 WL 2650219, at *9 (D. Haw. July 5, 2011); *Velez*, 2011 WL 572523, at *3, and has explained that there appears to be no statutory or common

45

law basis for such claims.  Indeed, numerous courts in this Circuit have likewise rejected that securitization of a mortgage loan provides the mortgagor a cause of action.  *See, e.g.*, *Unlu v. Wells Fargo Bank NA*, 2011 WL 6141036, at *8 (N.D. Cal. Dec. 9, 2011) ("To the extent that Plaintiffs' proposed amended complaint would rely on claims regarding the securitization of the loan, via REMIC, into a mortgage-backed security, there is no merit to the contention that securitization renders the lender's loan in the property invalid." (quotations omitted)); *Coleman v. Am. Home Mortg. Servicing, Inc.*, 2011 WL 6131309, at *4 (D. Nev. Dec. 8, 2011) ("[T]o the extent Plaintiff's allegations are construed to state claims regarding improper securitization of a mortgage, these also fail."); *Henkels v. J.P. Morgan Chase*, 2011 WL 2357874, at *7 (D. Ariz. June 14, 2011) (denying the plaintiff's claim for unauthorized securitization of his loan because he "cited no authority for the assertion that securitization has had any impact on [his] obligations under the loan, and district courts in Arizona have rejected similar arguments"); *Johnson v. Homecomings Fin.*, 2011 WL 4373975, at *7 (S.D. Cal. Sept. 20, 2011) (refusing to recognize the "discredited theory" that a deed of trust "'split' from the note through securitization, render[s] the note unenforceable").

    In opposition, Plaintiff points to no law indicating that securitization can be the basis of a cause of action.  Instead, Plaintiff argues that her claims

46

should be viewed as a breach of contract claim -- Defendants allegedly breached

the parties' agreement that Plaintiff was receiving a "loan" when the mortgage was

subsequently converted into a security instrument.  Doc. No. 67, Pl.'s Opp'n at 31-

32.  The court rejects this argument -- Plaintiff fails to point to any actual term in

the parties' mortgage that prevented securitization of the loan.  The court therefore

GRANTS Defendants' Motion to Dismiss Counts XI through XIV.

## K.    Quiet Title (Count XV)

Count XV asserts that Plaintiff is entitled to clear title of the subject

property and that Defendants are without "legal or equitable right, claim, or interest

in the property."  Doc. No. 60, SAC ¶¶ 159-60.

This claim fails to state a claim upon which relief can be granted.  As

an initial matter, Plaintiff has not alleged sufficient facts regarding interests of the

various parties to make out a cognizable claim for "quiet title."  Plaintiff has

merely alleged the basic elements of a quiet title claim, and thus the Count fails to

state a claim.  *See Iqbal*, 129 S. Ct. at 1949 ("A pleading that offers 'labels and

conclusions' or 'a formulaic recitation of the elements of a cause of action'" is

insufficient.).

Further, in order to assert a claim for "quiet title" against a mortgagee,

a borrower must allege they have paid, or are able to tender, the amount of

indebtedness.  "A basic requirement of an action to quiet title is an allegation that plaintiffs 'are the rightful owners of the property, *i.e.*, that they have satisfied their obligations under the deed of trust.'"  *Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 975 (N.D. Cal. 2010) (quoting *Kelley v. Mortg. Elec. Registration Sys.*, 642 F. Supp. 2d 1048, 1057 (N.D. Cal. 2009)).  "[A] borrower may not assert 'quiet title' against a mortgagee without first paying the outstanding debt on the property."  *Id.* (applying California law -- *Miller v. Provost*, 26 Cal. App. 4th 1703, 1707, 33 Cal. Rptr. 2d 288, 290 (1994)  ("[A] mortgagor of real property cannot, without paying his debt, quiet his title against the mortgagee") (citation omitted), and *Rivera v. BAC Home Loans Servicing, L.P.*, 2010 WL 2757041, at *8 (N.D. Cal. July 9, 2010)).[9]

The court therefore GRANTS Defendants' Motion to Dismiss Count XV.

## L.    Constructive Trust (Count XVI)

Count XVI requests that the court declare a constructive trust.  Doc.

---

[9]  Plaintiff argues that she brings this claim under common law, as opposed to HRS § 669-1.  Regardless, it is deficiently pled.  Plaintiff further argues that Hawaii caselaw suggests that Plaintiff need not assert the ability to tender the loan proceeds.  The cases cited by Plaintiff, however, does not address quiet title claims asserted by a mortgagor and are therefore inapposite. *See Alexander & Baldwin, Inc. v. Silva*, 124 Haw. 476, 248 P.3d 1207 (Haw. App. 2011) (addressing quiet title claim where titles were disputed); *Maui Land & Pineapple Co., Inc. v. Infiesto*, 76 Haw. 402, 879 P.2d 507 (1994) (similar).

No. 60, SAC ¶ 165.  "[A] constructive trust is not a claim, in and of itself, rather it is a remedy which may be sought by a plaintiff after he or she has established that certain prerequisites have been met."  *Kona Enters., Inc. v. Estate of Bishop*, 51 F. Supp. 2d 1048, 1055 n.2 (D. Haw. 1998); *Lund v. Albrecht*, 936 F.2d 459, 464 (9th Cir. 1991) (stating that "a constructive trust is a remedial device, not a substantive claim on which to base recovery").  The court therefore dismisses this claim.  A constructive trust may be available if Plaintiff is entitled to such a remedy on an independent cause of action.

## V.  <u>CONCLUSION</u>

For the foregoing reasons, the court GRANTS in part and DENIES in part Defendants' Motion to Dismiss.  Count I (to the extent based on a violation of 12 U.S.C. § 2605(e)(3)) and Count III of the SAC remain.

As discussed at the January 30, 2012 hearing, if Plaintiff wishes to seek leave to amend the SAC, she must file an appropriate motion pursuant to Rule 15.  Such motion, if filed, should (1) provide as an exhibit the proposed Third Amended Complaint; and (2) address how she has corrected the deficiencies of the SAC outlined in this Order.  In attempting to amend the SAC, Plaintiff should carefully read this Order and not simply re-allege claims that this court has already dismissed or that Plaintiff cannot in good faith amend.  For example, Plaintiff

should not allege (1) a quiet title claim without alleging an ability to tender the

loan proceeds; (2) any claims based on securitization of the mortgage loan; (3) a

breach of contract claim without identifying the contract at issue, the parties to the

contract, whether Plaintiff performed under the contract, the particular provision of

the contract allegedly violated by the parties, when and how the parties allegedly

breached the contract, and how Plaintiff was injured; or (4) any "claims" that are in

actuality remedies.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, February 6, 2012.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Menashe v. Bank of New York et al.*, Civ. No. 10-00306 JMS/BMK, Order Granting in Part Defendants Bank of New York's, Bank of America, N.A.'s, and BAC Home Loans Servicing LP's Motion to Dismiss Second Amended Complaint Filed on October 12, 2011